# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Target Device #2, Black Samsung cellular device with a cracked screen in a black case<br>Seizure No. 7 | )<br>)<br>)  Case No.  **24mj1121-BGS**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 2; 18 U.S.C. § 924(c) and 18 U.S.C. § 2; 21 U.S.C §§ 841, 843, 846 and 18 U.S.C. § 2 | Possession of a Firearm by a Person Subject to Certain Protection Orders and During the Commission of a Drug Trafficking Crime; Possession of a Controlled Substance with the Intent to Distribute; Using a Communication Facility for Felony Conduct; Conspiracy to Possess with Intent to Distribute; Aiding and Abetting as to all offenses. |

The application is based on the

See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Sean Davis*
Applicant's signature

Sean Davis, ATF Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: March 15, 2024 at 5:00 p.m.

Judge's signature

City and state: San Diego, California      Hon. Bernard G. Skomal, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Sean Davis, being duly sworn, hereby state as follows:

# INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

    a. Black Motorola cellular device
Seizure No. 5
IMEI: 351394594858641
("**Target Device 1**")

    b. Black Samsung cellular device with a cracked screen in a black case
Seizure No. 7
("**Target Device 2**")

    c. Black Motorola cellular device in purple sparkle case with stickers
Seizure No. 6
("**Target Device 3**")

(collectively, the "**Target Devices**")

as further described in Attachments A-1 through A-3, and to seize evidence of a crime, specifically, violations of Title 18, United States Code, Sections 922(g)(8) and 924(c)(1); Title 21, United States Code, Sections 841(a)(1), 843, and 846; and Title 18, United States Code, section 2 as to all offenses, as further described in Attachment B.

2. The requested warrant is related to the investigation and prosecution of Andres BARRON ("Defendant" or "BARRON") in *United States v. Barron*, 23-cr-2620-BTM for violations of Title 18, United States Code, Section 924(c)(1) and Title 21, United States Code, Section 841(a)(1). The **Target Devices** are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms & Explosives, San Diego II Field Office, 9449 Balboa Avenue, Suite 200, San Diego, CA, 92123.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient

probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of criminal laws of the United States, and thereby authorized to request the issuance of federal search and seizure warrants. I am empowered to conduct investigations of, and to make arrests for, federal offenses. I am a Special Agent employed by the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), since January 2022.

5. Currently, I am assigned to San Diego Group II, and operate primarily out of the city of San Diego, focusing on illegal firearms possessors, illegal firearms dealers, illegal narcotics distributors, and violent criminal street gangs. In this capacity, I investigate and assist in firearms and illegal narcotics cases involving, but not limited to, the purchase, possession, sales, manufacture, and distribution of firearms, illegal narcotics, and street gang violence.

6. Prior to my employment with ATF, I was employed by Immigration and Customs Enforcement ("ICE") for over seven years as a Deportation Officer and prior to that I was employed as a U.S. Border Patrol Agent for seven years. While employed with ICE I was assigned to the U.S. Marshals Service San Diego Fugitive Task Force ("FTF") as a sworn special deputy assigned to track and apprehend fugitives. I attended the U.S. Border Patrol Academy in Artesia, NM, for approximately 26 weeks.

7. I have also participated in investigations that involved the illegal acquisition of firearms and possession of firearms by prohibited persons. I have participated in

investigations that involved interstate and international firearms trafficking. I have also participated in the search of residences involving federal and state firearms violations.

8. I have participated in or been case agent on over 300 cases involving fugitives from federal as well as state jurisdictions. I have investigated all aspects of fugitive tracking from administrative immigration warrants to active felony murder warrants. I have interviewed informants, executed search warrants, arrested and interviewed subjects, conducted physical and electronic surveillance, and worked with prosecutors in the litigation of state and federal cases.

9. I have participated with narcotic investigations that have resulted in the seizure narcotics ranging from personal amounts of marijuana to multiple kilograms of methamphetamine and cocaine. I have seized vehicles, cellular devices used in drug trafficking schemes, as well as searched them for evidence of further drug trafficking evidence. I have used this evidence to further investigations into drug trafficking networks as well as other evidence of criminal activity.

10. The facts set forth in this affidavit are based upon my personal observations, training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

11. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, including cellphone, I am aware that conspiracies involving the manufacture, illegal possession, or trafficking of firearms, and/or the manufacture and distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements and payment, names, photographs, text messages, and phone numbers of coconspirators. This information can be stored within disks, memory cards, deleted data, remnant data, slack

space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the illegal possession of firearms and/or the distribution of narcotics may yield evidence:

a. tending to identify attempts to manufacture, illegally possess or traffic firearms, and/or possess federally controlled substances with the intent to distribute them within the United States;

b. tending to identify other accounts, facilities, storage devices, and/or services such as email addresses, IP addresses, and phone numbers – used to facilitate the manufacturing, illegal possession or trafficking firearms or any other illegal firearms activity and/or the possession of federally controlled substances with the intent to distribute them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacturing, illegal possession or trafficking of firearms or any other illegal firearms activity and/or federally controlled substances with the intent to distribute them within the United States;

d. tending to identify travel to or presence at locations involved in the manufacturing, illegal possession or traffic firearms or any other illegal firearms activity within the United States and/or federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

e. tending to identify efforts to obtain or otherwise possess firearm, ammunition, or firearm parts, such as magazines, as well as communications tending to demonstrate the intended purpose for the possession of the firearm(s);

f. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of firearms and drug trafficking, controlled substance manufacture and distribution investigations, and the opinions stated below are shared by them. Further, I have been personally involved in the investigation that is the subject of this affidavit and I am familiar with the facts outlined below, or I have read the reports of investigation prepared by persons mentioned in this affidavit. Among

4

other things, my knowledge comes from my personal participation in this investigation and my analysis of the reports submitted by other law-enforcement officers participating in this investigation.

13. Based on the information below, I have probable cause to believe that the requested information will lead to evidence of:

    a. Evidence of a crime,

    b. Contraband, fruits of a crime, or other items illegally possessed, and

    c. Property designed for use, intended for use, or used in committing a crime, specifically, violations of Title 18, United States Code, Sections 922(g)(8) and 924(c)(1); Title 21, United States Code, Sections 841(a)(1), 843, and 846; and Title 18, United States Code, section 2 as to all offenses, as well as to the identification of additional individuals who are engaged in the commission of these offenses.

**FACTS SUPPORTING PROBABLE CAUSE**

14. During the course of my duties, I have learned the following information from having read the reports prepared by other law enforcement officers. The following does not contain all the information known to me or other federal agents and state and local officers regarding this investigation but does contain at least those facts believed to be necessary to establish the requisite probable cause.

15. On October 21, 2023, at approximately 9:09 p.m. a Chula Vista Police Department Officer observed a Dodge Ram truck run a stop sign near the intersection of Manya Street and Hollister Street. As the officer approached the Dodge, the officer also observed one of the Dodge's brake lights was nonoperational. The officer then initiated a traffic of the Dodge ram based upon the traffic violation and the nonoperational brake light. The driver was identified as Andres BARRON and the passenger was identified as a female with the initials J.M.

16. BARRON exited the Dodge as the officer was also exiting the patrol car. As BARRON stood outside the Dodge, the officer observed, in plain view, a baggy of white crystalline substance partially covered by a cushion on top of the Dodge's driver's seat

5

where BARRON had been sitting. The officer recognized the substance on the driver's seat of the Dodge as crystal methamphetamine and also recognized the manner of packaging as consistent with possession for distribution. Additional officers arrived to assist the traffic stop and BARRON was then placed under arrest for possession of a controlled substance.

17. The Dodge was searched incident to BARRON's arrest. Officers seized, among other items, multiple plastic baggies containing approximately 40.21 grams of suspected methamphetamine from the driver's seat and a loaded Ruger firearm bearing serial number 336-82056. The Ruger firearm was located within a silver box positioned behind the driver's seat, with a loaded magazine and round in the chamber. Records check revealed BARRON to be a convicted felon and also under an active temporary restraining order with J.M. as the protected party. J.M. was placed under arrest after officers recovered a glass pipe from her wallet.

18. A Motorola phone in a purple sparkly case with stickers **(Target Device 3)** was see on the passenger seat and, when searching a purse belonging to passenger J.M., officers found a black Motorola cellular device **(Target Device 1)** and a black Samsung cellular device with a cracked screen in a black case **(Target Device 2)**.

19. While still at the location of the traffic stop, BARRON requested that the officers give J.M. his phone and other personal effects. When the officer asked BARRON specifically what phone was his, BARRON stated, "It's the black one with the cracked screen." When the officer asked who the other phones in the vehicle belonged to BARRON stated that one belongs to his daughter, and one belonged to his son. Before the conversation with the officer concluded BARRON once again stated "Can you give her my phone?" and was referring to J.M. as "her."

20. While being transported from the scene of arrest to Chula Vista City Jail, BARRON spontaneously stated to police: "I know you guys make a lot of money, but I do what I have to do to make money, even though it's wrong."

21. BARRON agreed to a post-arrest interview with police. Regarding the Ruger firearm, BARRON stated he found the firearm from a homeless person near the scene of

the arrest and that he (BARRON) tried to hide it in the vehicle once he saw police. BARRON stated he planned to sell the firearm for money. Regarding the methamphetamine, BARRON stated he typically purchases two ounces at a time and pays $60.00 per ounce. BARRON denied possessing the methamphetamine for sale and, instead, told officers the methamphetamine was for his personal use.

22. J.M. also agreed to a post-arrest interview with police. During the interview, J.M. stated her and BARRON had been dating for thirteen years. J.M. also stated she does not know anything about the silver case in which the Ruger firearm was found. Further, J.M. stated she had the glass pipe in her purse because she took it from BARRON and she does not use methamphetamine. During the interview J.M. asked the officers "What happened to my phone?" and, when asked what phone belonged to her, she stated, "It's the one with stickers and the black one." Almost immediately after this, J.M. stated that all the phones belonged to her. J.M. was inconsistent with BARRON's statements about who owned the phones. *See* ¶ 19.

23. The Ruger firearm was seized and inspected. Preliminary checks revealed that the firearm was not manufactured in California. Therefore, the firearm traveled in, and/or affected interstate commerce to arrive in the state of California.

24. A records check revealed BARRON was convicted in San Diego Superior court on October 15, 2020, of false imprisonment and was not legally allowed to possess a firearm.

25. The substances seized from BARRON's car were preliminary tested by the Chula Vista Police Department and tested positive for methamphetamine.

26. Based upon my training and experience as it pertains to narcotic related investigations, it is a common practice for narcotic traffickers to work in concert with other individuals, brokers, dealers, sellers and buyers, and to do so by utilizing digital devices, including cellphones, to maintain and store communications and related items with co-conspirators, buyers, sellers, and brokers in order to further their criminal activities.

27. Dealers are also known to carry multiple phones or "burner" phones which contain the contact information of their buyers. Drug dealers are also known to carry firearms for personal protection when conducting deals. Based upon these facts, I believed BARRON possessed the methamphetamine, with the intent to sell. Moreover, in my training and experience, and in the experience of officers and agents I work with and rely upon, the presence of a distributable amount of narcotics packaged for sale, a loaded firearm, and multiple cellphones is a strong indication of narcotics trafficking.

28. In addition, cellphones are a common device used by traffickers in the planning and coordination of a drug trafficking event in the days, weeks, and months prior to an event. It is also common for drug traffickers to have significant others or friends hold electronic devices in their possession and falsely claim them as their own in order to avoid detection by law enforcement officers. It is also common for drug traffickers to use multiple electronic devices and/or devices of friends or significant others to further their drug trafficking schemes or evade detection by law enforcement. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Further, co-conspirators are often in communication in the days and weeks after a trafficking event, as the drug distribution conspiracy continues. I also know, based on my training and experience, that traffickers frequently use multiple phones, commonly change their phones often, and, using services such as cloud-based data backup programs, transfer data from one phone for another. Accordingly, I request permission to search the **Target Devices** for data beginning on **September 21, 2023** [one month prior to the seizure date] through **October 21, 2023** [seizure date].

## METHODOLOGY

29. It is not possible to determine, merely by knowing the cell phone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cell phones and text message devices, can include cameras, can serve as personal digital

8

assistants, and have functions such as calendars and full address books and can be minicomputers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cell phones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cell phone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cell phones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

31. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within **ninety (90) days of the date the warrant is signed**, absent further application to this court.

//

//

9

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

32. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

33. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of violations of Title 18, United States Code, Sections 922(g)(8) and 924(c)(1); Title 21, United States Code, Sections 841(a)(1), 843, and 846; and Title 18, United States Code, section 2 as to all offenses.

34. Because the **Target Devices** were seized at the time of BARRON's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **September 21, 2023** [one month prior to the seizure date] through **October 21, 2023** [seizure date].

35. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Sean Davis*
_____
Sean Davis
ATF, Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___15___ day of ___March___ 2024.

_____
Hon. Bernard G. Skomal
United States Magistrate Judge

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black Samsung cellular device with a cracked screen in a black case Seizure No. 7 ("**Target Device #2**")

**Target Device #2** is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms & Explosives, San Diego II Field Office, 9449 Balboa Avenue, Suite 200, San Diego, CA, 92123.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachments A-1, A-2 and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of **September 21, 2023** [one month prior to the seizure date] through **October 21, 2023** [seizure date]:

a. tending to identify attempts to manufacture, illegally possess or traffic firearms, and/or possess federally controlled substances with the intent to distribute them within the United States;

b. tending to identify other accounts, facilities, storage devices, and/or services such as email addresses, IP addresses, and phone numbers – used to facilitate the manufacturing, illegal possession or trafficking firearms or any other illegal firearms activity and/or the possession of federally controlled substances with the intent to distribute them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacturing, illegal possession or trafficking of firearms or any other illegal firearms activity and/or federally controlled substances with the intent to distribute them within the United States;

d. tending to identify travel to or presence at locations involved in the manufacturing, illegal possession or traffic firearms or any other illegal firearms activity within the United States and/or federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

e. tending to identify efforts to obtain or otherwise possess firearm, ammunition, or firearm parts, such as magazines, as well as communications tending to demonstrate the intended purpose for the possession of the firearm(s);

f. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

1  .
2  which are evidence of Title 18, United States Code, Sections 922(g)(8) and 924(c)(1); Title
3  21, United States Code, Sections 841(a)(1), 843, and 846; and Title 18, United States Code,
4  section 2 as to all offenses.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28